UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| DWAYNE MILNE AND JACLYNN PAUL as GUARDIANS OF B.M., | ) ) ) | Civ. No. 5:22-cv-05017-JLV |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| DR. GREG GADEN, REBECCA LEEDS, HOLLIE HOFFMAN, CHARLIE SERSEN, KARN BAKER, BROOKE CHENEY, JAIMIE MUTTER, LEAH LUDWIG, JESSICA CULLUM, UNKNOWN STAFF AT KNOLLWOOD ELEMENTARY, DR. LORI SIMON, RAPID CITY AREA SCHOOL DISTRICT, RAPID CITY SCHOOL BOARD, SOUTH DAKOTA DEPARTMENT OF EDUCATION, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **PLAINTIFFS' RESPONSE TO DEFENDANT SOUTH DAKOTA DEPARTMENT OF EDUCATION'S MOTION TO DISMISS** |
| Defendants. | ) ) | |

_____

Plaintiffs, by and through their undersigned counsel, respectfully submits Plaintiffs Response to Department of Education's Motion to Dismiss.

## I.   PRELIMINARY STATEMENT

The "gravamen" of Plaintiffs' allegations in this case stem from the abuse, neglect, and deliberate indifference B.M. endured at Knollwood Elementary during the fall of the 2019 school year. Defendant South Dakota Department of Education's ("Defendant") attempt to recast Plaintiffs' forty-six-page complaint and sixteen-claims should be ignored by this Court, because the substance of

1

Plaintiffs' allegations seeks relief that the Individuals with Disabilities Education Act ("IDEA") cannot reward. Thus, Defendants' assertion that the statute of limitations ("SOL") within IDEA should apply to this lawsuit is incorrect. Plaintiffs are alleging injuries to B.M., a disabled minor, federal civil rights violations, and fraudulent concealment. Under South Dakota law, Plaintiffs are well within whichever of the SOLs this Court may find applicable to this case.

Plaintiffs', in conjunction with this Response, have also Motioned for Leave to Amend their Complaint to further streamline their pursuit for relief. The 11th Amendment does not bar capacity suits under § 1983, and Plaintiffs intend to name the actors within the Defendant educational entities once they become known in discovery. There are sufficient facts at this point to know these entities were on notice of the policies, unofficial customs, and deliberate indifference taking place at Knollwood Elementary. However, whomever was aware within the Defendant entities may only be revealed through discovery.

Lastly, Plaintiffs' have sufficiently alleged gross misjudgment and deliberate indifference on the part of Defendants in this case. However, in their Motion to Amend, Plaintiffs further particularized these allegations. As such, Plaintiffs request that this Court deny Defendant South Dakota Department of Education's Motion to Dismiss and allow Plaintiffs' case to proceed to discovery.

II.   **FACTS ALLEGED IN COMPLAINT**

In responding to Defendant South Dakota Department of Education's ("Defendant") Motion to Dismiss, Plaintiffs rely on the facts set forth in their Complaint.  (Doc. 11 at pgs. 5-10.) Additionally, Plaintiffs direct the Court's attention to the sixteen counts of constitutional violations, civil rights violations, and common law torts alleged against Defendant. (*Id.* at pgs. 10-46.) This case is about the abuse and neglect B.M. suffered at the hands and discretion of South Dakota educators and their supervisors.

At the time of the events that underly this lawsuit, B.M. was an 8-year-old boy who was 4' tall and weighed 65 lbs. (*Id.* at ¶ 27.) B.M. is diagnosed with Autism Spectrum Disorder, ADHD, Insomnia, and restless leg syndromed by Dr. April Levin of the Autism Spectrum Center/Department of Neurology of Boston Children's Hospital, in Boston, Massachusetts. (*Id.* at ¶ 28.) B.M. was in a third-grade student at Knollwood Elementary School in Rapid City, South Dakota (the school and all staff associated with Knollwood will be collectively herein referred to as "Knollwood"). (*Id.* at ¶ 29.) B.M had an Individualized Education Plan ("IEP") developed to accommodate his disabilities. (*Id.* at ¶¶ 34 and 39.) The IEP addressed specific areas of learning and non-learning, which B.M. required additional attention or help. (*Id.* at ¶¶ 35-37.) The IEP did not include permissive use of any method of restraint or seclusion. (*Id.*) Knollwood was acutely aware of the specific indicia of B.M.'s IEP. (*Id.* at ¶ 39.)

On September 4, 2019, B.M. was excited to get into Knollwood and begin school and attempted to enter Knollwood before the rest of his class. (*Id.* at ¶

43.) Becky Leeds ("Leeds"), who was part of the staff at Knollwood, tackled, assaulted, and restrained B.M. (*Id.*) Later that day, B.M. attempted to leave Knollwood before school was over for the day. (*Id.* at ¶ 45.) While attempting to leave, B.M. was assaulted and restrained by Hollie Hoffman ("Hoffman"), Charlie Sersen ("Sersen"), Karn Baker ("Baker"), and Brooke Cheney ("Cheney"). (*Id.*)

Following the September 4, 2019, assault and restraint of B.M., on September 5, 2019, Knollwood held an IEP meeting to address a new behavioral intervention plan ("BIP") for B.M. (*Id.* at ¶ 48.) Within the BIP plan, restraint methods were allowed, but "only as a last resort." (*Id.* at ¶ 49.) The BIP did not describe what restraint methods could or should be use or when they could be used. (*Id.* at ¶ 50.) The BIP did not allow for any permissive use of methods of seclusion. (*Id.* at ¶ 51.) In the event B.M. was restrained for any reason, B.M.'s parents, Dwayne Milne and Jaclynn Paul, would be contacted immediately. (*Id.* at ¶ 52.)

Within Knollwood, there was an area used for de-escalation and seclusion colloquially referred to as "Hawaii." (*Id.* at ¶ 53.) "Hawaii" was located in the corner of an empty classroom and resembled a cattle pen. (*Id.* at ¶¶ 54-55.) "Hawaii" was walled off by three five-foot-high dividers. (*Id.* at ¶ 55.) B.M.'s IEP did not allow for permissive use of seclusion in "Hawaii" for any reason. (*Id.* at ¶¶ 32-34.)

Following the September 5, 2019, IEP meeting, B.M. was assaulted, caged, and secluded on numerous occasions:

4

- On September 13, 2019, Jamie Mutter ("Mutter") and Baker assaulted, caged, and secluded B.M. in "Hawaii" for 34 minutes (*Id.* at ¶¶ 57-59);

- On September 24, 2019, Mutter and Sersen assaulted, caged, and secluded B.M. in "Hawaii" on two separate occasions, for 20 and 25 minutes, respectively (*Id.* at ¶ 60-63);

- On September 25, 2019, Mutter, Sersen, and Cheney assaulted, caged, and secluded B.M. in "Hawaii" for 24 minutes (*Id.* at ¶ 64);

- On September 30, 2019, Sersen, Cheney, Mutter, and Leah Ludwig ("Ludwig") assaulted, caged, and secluded B.M. in "Hawaii" on two separate occasions for 13 and 25 minutes, respectively (*Id.* at ¶ 65);

- On October 3, 2019, Mutter, Hoffman, Ludwig, Sersen, Baker, and Jessica Cullum ("Cullum") assaulted, caged, and secluded B.M. in "Hawaii" on two separate occasions for 20 and 10 minutes, respectively (*Id.* at ¶ 66); and,

- On October 4, 2019, Mutter, Sersen, and Baker assaulted, caged, and secluded B.M. in "Hawaii" for 20 minutes. (*Id.* at ¶ 67.)

At no point following the September 5, 2019, IEP meeting were Dwayne Milne and Jaclynn Paul notified of any of the abusive events their child endured. (*Id.* at ¶ 72.)

On October 4, 2019, Dwayne Milne went to Knollwood to pick up B.M. (*Id.* at ¶ 68.) Upon entering and searching Knollwood for B.M., Dwayne Milne

5

found B.M. caged and secluded in "Hawaii." (*Id.*) B.M. was distraught and curled up on the floor of the makeshift animal pen crying. (*Id.*)_

On October 7, 2019, Mutter, Sersen, and Cullum assaulted caged, and secluded B.M. in "Hawaii for 20 minutes. (*Id.* at ¶ 69.) On the same day, Jaclynn Paul went to Knollwood to drop off some items B.M. had forgotten. (*Id.* at ¶ 70.) After entering and searching Knollwood for B.M., Jaclynn Paul found B.M. caged and secluded in "Hawaii." (*Id.*) On the same day, Dwayne Milne and Jaclynn Paul immediately removed B.M. from enrollment at Knollwood. (*Id.* at ¶ 71.)

The facts and counts in Plaintiffs' complaint illustrate the substance of their complaint. While B.M. endured these horrible realities at an educational institution, the significance of that commonality ends with its coincidental nature. Plaintiffs' do not seek a reformed attempt at a FAPE for B.M. Rather, Plaintiffs bring their complaint for the permanent damage B.M. sustained while at Knollwood.

## III.   DISCUSSION

### A.   Standard of Review

Under Rule 12(b)(1), Defendant must successfully challenge the complaint "on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). This Court must therefore distinguish between facial and factual attacks. *See B.P. Chem. Ltd. v. Jiangsu Sopo Corp.*, 285 F.3d 677, 680 (8th Cir. 2002). When conducting an inquiry based on a facial challenge, a district court will evaluate "whether the asserted

jurisdiction basis is patently meritless by looking to the face of the complaint . . . and drawing all reasonable inferences in favor of the plaintiff." *Biscanin v. Merrill Lynch & Co.*, 407 F.3d 905, 907 (8th Cir. 2005).

The non-moving party will benefit from all the protections of 12(b)(6). *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). The general rule is that a complaint should not be dismissed "unless it appears *beyond doubt* that the plaintiff can prove no set of facts in support of the claims which would entitle him to relief. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957)) (emphasis added). In this case, the Defendant makes a facial attack on subject matter jurisdiction: they assert that even if the complaint's allegations are presumed true, jurisdiction does not lie. *See D.L. v. Waukee Cmty. Sch. Dist.*, 578 F. Supp. 2d 1178, 1182 (8th Cir. 2008).

In ruling on a motion to dismiss under Rule 12(B)(6), this Court must again "accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor." *Riveretz's Auto Care v. Citi Cards*, No. Civ. 08-4208, 2009 WL 2825383, at *2 (D.S.D. Aug. 27, 2009) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). Because the pleading rules require only 'notice' pleading, rather than detailed fact pleading, a court must construe plaintiff's allegations liberally and should only dismiss a complaint if a plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### B.     Plaintiffs' Complaint Centers on Abuse, Neglect, Constitutional Violations, Civil Rights Violations, and Violations of Human Dignity.

Plaintiffs' allegations do not merely center on the fact that the severe abuse and neglect B.M. endured while at Knollwood prevented B.M. from benefitting from a public education. Rather, the constitutional violations, civil rights violations, and common law torts Plaintiffs bring to this Court are for the redress of the permanent damage to B.M. The fact that the abuse and neglect B.M. endured hindered B.M.'s ability to receive a public education is only tangential to Plaintiffs' allegations.

Defendant's SOL argument requires that this Court find Plaintiffs' allegations only focus on the fact that B.M. did not receive a "free appropriate public education" ("FAPE") at Knollwood. If this Court finds that the relief Plaintiffs seek is not for the denial of FAPE, Defendant's SOL argument is moot because Plaintiffs are well within any applicable SOL this Court may find governs this case, as explained below. In order to determine what relief Plaintiffs seek this Court must determine what the "gravamen" of their complaint is. *Fry v. Napolean Cmty. Schools,* 137 S.Ct. 743, 748 (2017).

IDEA ensures that all children with disabilities are afforded a FAPE. 20 U.S.C. § 1400(d)(1)(A). "In the IDEA, Congress established procedural safeguards to ensure individuals with disabilities will have the opportunity to obtain a [FAPE]." *J.M. v. Francis Howell School Dist.,* 850 F.3d 944, 947 (8th Cir. 2017) (citing *J.B. ex rel. Bailey v. Avilla R-XIII School Dist.,* 721 F.3d 588, 592 (8th Cir. 2013)). An aggrieved party, who believes FAPE is not being

afforded to a disabled child, may present their complaints through an impartial due process method and subsequently challenge the outcome before the state educational review agency. *J.B.,* 721 F.3d at 592 (citing 20 U.S.C. §§ 1415(f)-(g)(1)). "The outcome of the administrative review hearing may then be disputed in district court." *See* 20 U.S.C. § 1415(i)(2)(A).

If a lawsuit brought in district court seeks the relief IDEA affords, ensuring a disabled child receives a FAPE, a plaintiff must have exhausted their administrative remedies through IDEA before bringing a challenge to the state educational review agency's final determination. *J.M.*, 850 F.3d at 947-48. If a plaintiff is seeking relief for the denial of FAPE in district court and fails to exhaust their administrative remedies under IDEA, the plaintiff may face dismissal without prejudice. *Id.* However, "exhaustion is not necessary when the gravamen of the plaintiff's suit is something other than the denial of the IDEA's core guarantee—what the Act calls a 'free appropriate public education.'" *Fry*, 137 S.Ct. at 748.

In order to determine what the "gravamen" of Plaintiffs' allegations are, this Court need only look to the Supreme Court's instruction in *Fry v. Napolean Cmty. Schools*. In *Fry*, the Supreme Court instructed lower courts that whether a plaintiff's allegations regard the denial of a FAPE or instead address disability-based discrimination in an educational setting, depends on the "gravamen" of a plaintiff's allegations. *Fry*, 137 S.Ct. at 755. The "gravamen" of a plaintiff's allegations is determined by the "substance, not surface" and that "[t]he use (or non-use) of particular labels and terms is not what matters." *Id.*

at 755. The Court endorsed two methods for a court to employ when seeking the "gravamen" of a plaintiff's allegations. *Id.* at 756-57.

The Court's first endorsed method poses two hypothetical questions to determine whether a plaintiff is seeking relief for the denial of FAPE or relief for disability-based discrimination:

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library? And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance? When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward.

*Id.* at 756. The Court then provided examples to illustrate its guidance. *Id.*

It first discussed a situation where a wheel-bound child sues his school for discrimination because the building lacks access ramps. *Id.* The lack of access ramps would certainly have educational consequences, but if the wheel-bound child was to bring the same allegations against a public theater or municipal library that lawsuit would have nothing to do with the adequacy of the child's education. *Id.* However, the action would still present a colorable discrimination lawsuit. *Id.* The Court determined a lawsuit of such substance does not concern the denial of FAPE. *Id.*

In contrast, suppose a student with learning disability sues his school for failing to provide remedial tutoring in mathematics. *Id.* at 756-57. Suppose the substance of the student's complaint does not mention FAPE or IDEA, but rather alleges discrimination under other federal statutes. *Id.* at 757. The Court

10

discussed that a lawsuit alleging discrimination, in the context of failing to provide remedial tutoring in mathematics brought against a public theater or brought by an adult visitor or employee, would likely concern only the denial of FAPE and would not be a colorable discrimination lawsuit. *Id.*

The second method the Court suggested for determining whether a lawsuit seeks relief for the denial of FAPE or relief for disability-based discrimination is to look to the history of the pleadings between the parties. *Id.* The Court discussed:

> A plaintiff's initial choice to pursue [the IDEA's formal procedures] may suggest that she is indeed seeking relief for the denial of a FAPE—with the shift to judicial proceedings *prior to full exhaustion* reflecting only strategic calculations about how to maximize the prospects of such a remedy. Whether that is so depends on the facts; a court may conclude, for example, that the move to a courtroom came from a late-acquired awareness that the school had fulfilled its FAPE obligation and that the grievance involves something else entirely.

*Id.* (emphasis added). It discussed where a plaintiff starts to exhaust "the Act's remedies before switching midstream," the plaintiff's actions are indicative of whether a plaintiff is actually seeking a remedy for the denial of a FAPE. *Id.*

The Honorable Charles B. Kornmann recently confronted a similar issue that this Court currently faces. *Doe v. Aberdeen School Dist.*, 1:18-CV-01025-CBK, 2019 WL 4740163 (D.S.D. Sept. 27, 2019). In *Doe,* six children with disabilities brought discrimination allegations against their school district and the faculty and staff involved in the alleged discrimination. *Id.* at *1-3. The discrimination centered on the faculty and staff of their school district pushing, shoving, dragging, and forcing disabled kids to swim. *Id.* at *1-2. All of the kids

11

had IEPs. *Id.* Defendants moved to dismiss for lack of jurisdiction on the basis that the "gravamen" of plaintiffs' lawsuit was the dissatisfaction with the education programs of the special education, as opposed to disability-based discrimination. *Id.* at *4.

Judge Kornmann denied the defendants' motion to dismiss on the basis that the plaintiffs claimed "separate and distinct harm arising from the alleged abuse" that indeed to took place in an educational setting, but focused on damages other than a failed FAPE. *Id.* The court considered the instruction of *Fry* and determined that "if plaintiffs' minor children had been participating in some program at a public library, public theater or public pool, they could certainly bring suit for being pushed, shoved or dragged by public employees." *Id.* Further, the court determined that a disabled adult could also bring suit for being "pushed, shoved, or dragged, in a school by school officials." *Id.* The court's holding was centered on the fact that the "[i]ssues of alleged physical and emotional abuse" were found throughout the complaint. *Id.* at *5.

### i. Under *Fry* and *Doe*, the "Gravamen" of Plaintiffs' Complaint Alleges Abuse, Discrimination, and Deliberate Indifference.

In the case at bar, Plaintiffs' allegations center on the discrimination in the form of deliberate indifference, neglect, and abusive treatment B.M. endured at Knollwood. On multiple occasions, B.M. was assaulted, restrained, and drug to "Hawaii." Nowhere in B.M.'s IEP allowed for permissive assault, restraint, or caging. While Plaintiffs were never aware of any of the abuse and neglect B.M. was experiencing prior to witnessing it first-hand at the beginning

12

of October 2021, Defendants' in this case were on clear notice of B.M.'s particularized and protected rights as a disabled child and a human being. This case is not about a denial of B.M.'s FAPE. It is about the deliberate indifference and abuse B.M. endured at Knollwood.

The "gravamen" of the sixteen claims Plaintiffs brings before this Court focus on the abuse, deliberate indifference, and discrimination B.M. endured at Knollwood, as opposed to the denial of FAPE. The abuse and discrimination that is the subject of this law suit represents "a separate and distinct harm" that qualifies as abuse and discrimination, regardless of its association with an educational setting. *See Doe*, 2019 WL 4740163 at *4.

Under *Fry's* instruction, the "gravamen" of Plaintiffs' allegations becomes clear. *Fry*, 137 S.Ct. at 756. If B.M. was in a program at a public pool, where they were aware of B.M.'s identified rights under his IEP, and the same events occurred, Plaintiffs would still be able to bring suit. If B.M. was in a program at a public pool and he was tackled, assaulted, and caged Plaintiffs would still be able to bring suit. If B.M. was a disabled adult in the same hypotheticals, Plaintiffs would still be able to bring suit. Defendant fails to identify what language or allegations in Plaintiffs' forty-six-page complaint and sixteen claims amount to evidence that Plaintiffs are seeking relief for the denial of FAPE.

As laid out extensively in the Amended Complaint and the original Complaint, Plaintiffs' allegations center on the gross and outrageous misconduct of the education professionals involved in B.M.'s situation and the

pain and suffering it had upon B.M. The misconduct by these professionals crossed B.M.'s education program with complete disregard to B.M.'s IEP and the rights B.M. was entitled.

### ii. Plaintiffs' Amended Their Original Complaint to Clarify What the "Gravamen" of Their Complaint is.

Defendant points to Plaintiffs' original Complaint and subsequent amendment for the bulk of their argument that Plaintiffs' allegations center on seeking relief for the denial of FAPE. (Doc. 18 at pgs. 5 and 8-10.) However, the "gravamen" of Plaintiffs' allegations is only determined by the "substance" and not the "surface" or "[t]he use (or non-use) of particular labels and terms is not what matters." *Fry*, 137 S.Ct. at 755. The only "substance" Defendants' point to are Plaintiffs' allegations regarding B.M.'s IEP and their original Complaint.[1] (Doc. 18 at pgs. 5 and 8-10.)

B.M. was entitled specific rights under his IEP. (*See e.g.* Docket 10 at pgs. 5-10.) Thus, the IEP is only used in Plaintiffs' complaint to show that the use of physical force, tackling, assault, restraints, and caging of B.M. was not authorized by B.M.'s IEP. (*Id.*) B.M.'s IEP merely shows that Knollwood was on of notice B.M.'s rights and was not authorized to use physical force, restrain, tackle, assault, and cage B.M. *See Moore v. Kansas City Public Schools*, 828 F.3d 687, 692 (8th Cir. 2016) (discussing plaintiff's mention of IEP in

---

[1] Defendant also mentions Plaintiffs' use of "The Federal Education for All Handicapped Children Act" in support of their SOL argument. (Docket 18 at pg. 10.) However, Plaintiffs only cite this statutory scheme to show that Defendants were on notice of the recognized and identifiable rights that B.M. had as a member of an identifiable protected class. (Docket 10 at pg. 16 and 28.)

14

complaint was solely to "show notice to the [school district] of the conditions that put [the disabled child] at risk" and that because plaintiff did not request any change to [disabled child's] IEP in complaint the plaintiff was not relying on the "IDEA or the rights it creates and protects"). Plaintiffs' mention of B.M.'s IEP is not determinative of whether Plaintiffs are seeking relief for the denial of FAPE, but rather, is evidence to show Defendants' wanton abuse and discrimination of B.M. in this case.

Further, Defendant points to Plaintiffs' amendment of their original complaint, in which Plaintiffs removed mention of IDEA and Plaintiffs' exhaustion of the IDEA administrative complaint and decision.[2] (Docket 18 at pg. 9.) Plaintiffs amended their original Complaint to further clarify the grievances they bring before this Court. Plaintiffs are not seeking relief for the denial of educational services and the substance of their forty-six-page complaint and sixteen claims demonstrates their plea. Regardless of Plaintiffs' amendment, both complaint's substance center on the abuse, neglect, discrimination, and misconduct of the education professionals involved in B.M.'s case.

Defendant's attempt to parallel Plaintiffs' suit with the plaintiff in *J.M. v. Francis Howell School District* is off point. (Docket 18 at pg. 8-10.) In *J.M.*, the Eighth Circuit upheld the dismissal of a lawsuit on the basis that the Court lacked subject matter jurisdiction because the relief plaintiff sought was for the

---

[2] Plaintiffs' have exhausted their administrative remedies under IDEA and did not "switch midstream", like what is contemplated in *Fry. Stapleton v. Penns Valley Area School District*, No. 4:15-CV-2323, 2016 WL 3077370 (D. Penn. June 1, 2016).

denial of J.M.'s FAPE and plaintiff had failed to exhaust their administrative remedies under IDEA. *J.M. v. Francis Howell School Dist.,* 850 F.3d 944, 950-51 (8th Cir. 2017). There, the plaintiff mother brought suit on behalf of her disabled child because she was dissatisfied with the school district's response to her request that her son not be placed in isolation and that the school only use restraints when necessary. *Id.*

The plaintiff brought suit in federal court alleging common law and civil rights violations, and the school district motioned to dismiss on the basis that the plaintiff's allegations regarded relief that could only be sought under IDEA. *Id.* at 947. The lower court granted the district's motion to dismiss and the Eighth Circuit affirmed. *Id.* at 944.

The Eighth Circuit found significant that only one of plaintiff's counts alleged discrimination and how the complaints discussions of isolation and restraint was only in regards to the district failing to provide "sufficient 'supportive services' to permit [J.M.] to benefit from . . . instruction." *Id.* at 949 (citing *Fry,* 137 S.Ct. at 748-49). The Eighth Circuit also considered plaintiff's choice to remove common law torts and IDEA counts from their original complaint, as evidence that plaintiff was in fact seeking relief for the denial of a FAPE. *Id.*; *but see Fry,* 137 S.Ct. at 755 (discussing that the "gravamen" of a plaintiff's allegations is determined by the "substance, not surface" and that "[t]he use (or non-use) of particular labels and terms is not what matters").

Plaintiffs' allegations are much different than the allegations in *J.M.* Plaintiffs are alleging abuse, neglect, and discrimination by way of deliberate

16

indifference to B.M.'s constitutional rights and human dignity, rather than alleging grievances related to the education professional's failure to deliver B.M. a FAPE. *J.M.*, 850 F.3d at 949. This Court need only look to the substance of Plaintiffs' allegations to find phrases like "deliberate indifference," "reckless," "negligence," "discrimination," and "discriminatory intent" littered throughout both their original and amended complaint. Plaintiffs' do not wish to re-write B.M.'s IEP for the chance for B.M. to receive a FAPE in the future. Plaintiffs' wish to recompense and reconcile the permanent damage that was a result of the deliberate indifference and neglect of B.M.'s human dignity while at Knollwood. This relief is reflected by the *substance* of Plaintiffs' allegations.

The Eighth Circuit's consideration of the plaintiff's prior un-amended complaints in *J.M.* containing common law tort counts and an IDEA count was improper because the court's analysis was only based on the labels and terms of the allegations plaintiff scrubbed, rather than the substance of the complaint itself. *See Fry,* 137 S.Ct. at 755. In addition, considering a superseded complaint is improper under the Federal Rules of Civil Procedure.[3] In any event, here, Plaintiffs scrubbed the IDEA count from their original complaint to

---

[3] Any arguments directed at Plaintiffs superseded original complaint should be denied as moot. *See e.g. Pacific Bell Telephone Co. v. Linkline Communications, Inc.*, 555 U.S. 438, 456 n.4 (2009) ("Normally, an amended complaint supersedes the original complaint."); *Dykes v. Portfolio Recovery Associates, LLC,* 306 F.R.D. 529, 530 (E.D. Va. April 28, 2015) (discussing "[i]t is well settled that an amended pleading supersedes the original, and motions directed at superseded pleadings must be denied as moot"); *Calloway v. Green Tree Servicing, LLC*, 599 F.Supp 2d 543, 546 (D. Del. Feb. 18, 2009) (discussing "[a]s the amended complaint has superseded the original, defendant's motion to dismiss has become moot").

streamline their plea for relief.[4] Plaintiffs did not scrub any common law tort counts or any other count regarding the permanent damages B.M. suffered. *J.M.* does not parallel the case before this Court and Defendant's argument asserting otherwise should be disregarded.

### iii.  Defendant's Assertion that the IDEA SOL Applies in this Case is Incorrect.

If this Court finds that Plaintiffs' Amended Complaint does not seek relief for the denial of FAPE, it need not reach the SOL issue Defendant raises. However, for clarity of their position, Plaintiffs wish to clarify which SOL applies to this lawsuit.

In their Motion to Dismiss Defendant urges this Court to adopt a SOL that is inapplicable in this case. (Docket 18 at pgs. 10-11.) However, Plaintiffs' case involves federal civil rights,[5] disabled children,[6] and fraudulent concealment.[7] (*See e.g.* Docket 10.) Whichever SOL this Court determines is applicable to this lawsuit, Plaintiffs are well within its parameters. Considering this case involved minors, Plaintiffs believe SDCL § 15-2-22 controls. However,

---

[4] If this court does look at Plaintiffs' original complaint, Plaintiffs in fact did not request B.M. is given relief for a denial of FAPE. (Docket 1 at pg. 34-35.) Instead, Plaintiffs' requested damages and attorneys' fees under IDEA for the discrimination B.M. endured. (*Id.*)

[5] The applicable state limitations statute for a federal civil rights action is SDCL § 15-2-15.2: Any action brought under the federal civil rights statutes may be commenced only within three years after the alleged constitutional deprivation has occurred. This section is prospective in application.

[6] South Dakota has adopted a tolling provision during a child's minority or disability, the maximum extension is five years after the incident accrues. SDCL § 15-2-22.

[7] Where fraudulent concealment of facts is alleged, a plaintiff may establish the existence of material facts in avoidance of the statute of limitations, like fraud or fraudulent concealment. *Strassburg v. Citizens State Bank*, 581 N.W.2d 510, 513 (S.D. 1998).

under of any of the applicable SOL chapters, Plaintiffs' have satisfied the standard.

Defendants' use of *D. v. Southington Bd. of Educ., I.M. ex rel. C.C. v. Northampton Public Schools*, and *Blunt v. Lower Merion Sch. Dist.*, is inappropriate because the plaintiffs in all three cases were appealing their state departments' final determinations of whether each plaintiff was denied a FAPE under IDEA. *See D. Southington Bd. of Educ.,* 119 F.Supp.2d 105, 107 (D. Conn. Oct. 20, 2000); *I.M. ex rel. C.C. v. Northampton Public Schools*, 869 F.Supp.2d 174, 175-77 (D. Mass. June 12, 2012); *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 255 (3d. Cir. 2014). Here, Plaintiffs are not contesting the final determination of the South Dakota Department of Education's findings in regards to B.M.'s FAPE. Plaintiffs are coming to this Court for the damages and relief available for the abuse, deliberate indifference, and discrimination that B.M. endured while at Knollwood, for which relief is not available under IDEA.

### C.   Plaintiffs' Motion to Amend Seeks to Further Particularize Defendants' Identities and Conduct.

In addition to Plaintiffs' Response to Defendant South Dakota Department of Education's Motion to Dismiss, Plaintiffs also submitted their Motion to Amend their First Amended Complaint. Plaintiffs named "Unknown Staff" in their original caption, but wish to further clarify that the fictious moniker applies to Knollwood, the South Dakota Department of Education, Rapid City Area School District, and Rapid City School Board. In addition to amending their caption, Plaintiffs' have also included additional factual

allegations to further particularize the Defendants' roles in this case. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.,* 550 U.S. at 570). Plaintiffs' have requested this Court's leave to amend their complaint in the interest of justice.

Plaintiffs have knowledge that the South Dakota Department of Education, and the other educational entities named as Defendants in this lawsuit, were aware of the policies at Knollwood that led to B.M.'s abuse and discrimination, prior to the abuse and discrimination of B.M. Plaintiffs believed their original Complaint was sufficient. Given the relationships between the named Defendant entities, it is both plausible and probable that all entities and their actors were on notice and aware of the policies and customs that facilitated the events that preceded this case. (Docket 10 at pgs. 2-3.) However, in the interest of expediting the relief Plaintiffs are seeking, Plaintiffs request this Court leave to further clarify and particularize this allegation. Plaintiffs' wish to proceed to discovery on these allegations.

Minimal discovery will unveil who at the South Dakota Department of Education, Rapid City Area School District, and Rapid City Board received the information, complaints, and reports of the abusive and discriminatory policies in place at Knollwood that led to this lawsuit.[8] At that moment, Plaintiffs would

---

[8] Courts have permitted discovery where the specific defendants are known at the time filing, but their specific names are yet to be identified. *See Dean v. Barber*, 951 F.2d 1210, 1215-17 (11th Cir. 1992); *Klingler v. Yamaha Motor Corp.*, 738 F.Supp. 898, 910 (E.D. Penn. April 23, 1990); *Stenhouse v. Jacobson*, 193 F.Supp. 694, 696 (N.D. Cal. April 20, 1961).

be able to name the specific actors responsible for the events that preceded this lawsuit.

### i. The 11th Amendment Does Not Bar Capacity Suits and There are Sufficient Facts to Allege Gross Misjudgment and Deliberate Indifference.

Plaintiffs' allegations against the multiple actors in this case are not barred by the 11th Amendment, because Plaintiffs intend to name the Defendant actors once they become known. *See e.g. Ex Parte* Young, 209 U.S. 123 (1908); *Hafer v. Melo*, 502 U.S. 21 (1991). Suits against state officials in their personal or official capacity are not barred by the 11th Amendment. *See e.g. Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 n.24 (1997); *Hafer*, 502 U.S. at 27; *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Murphy v. Arkansas*, 127 F.3d 750, 755 (8th Cir. 1997).

Further, there is enough of a particularized plausibility at this point to continue to discovery because there are sufficient facts that show the educational professionals in this case acted under either official policy, unofficial custom, or with deliberate indifference, to allow and facilitate B.M.'s abuse and discrimination. *See e.g. Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013); *Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013); *see also Ashcroft*, 556 U.S. at 678 (discussing a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'"). There is enough of a sufficient probability at this point to continue to discovery.

Lastly, there is not a heightened pleading requirement for Plaintiffs' allegations as Defendant seems to suggest. *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 164-68 (1993) (discussing FRCP 8(a)(2) requires only a "short and plain statement of the claim" for § 1983 claims, absent an express exception as articulated in FRCP 9(b)); *Doe v. Cassel*, 403 F.3d 986, 988-89 (8th Cir. 2005) (discussing that heightened pleading requirements for § 1983 do not apply in the Eighth Circuit). Either through their First Amended Complaint, or if the Court grants Plaintiffs' Second Amendment Complaint, Plaintiffs' have satisfied their pleading burden to advance this case to discovery. Thus, all counts specifically naming Defendant South Dakota Department of Education should not be dismissed.

## IV.    CONCLUSION

Defendant's Motion to Dismiss fails because the "gravamen" of Plaintiffs' original Complaint and First Amended Complaint focuses on the abuse, neglect, deliberate indifference, and discrimination that was caused upon B.M. by the educational professionals involved in his circumstances. Therefore, Defendant's proposed SOL argument fails.

Further, Defendant's Rule 12(b)(1) and 12(b)(6) arguments also fail. there are sufficient facts that show the educational professionals in this case acted under either official policy, unofficial custom, or with deliberate indifference, to allow and facilitate B.M.'s abuse and discrimination at Knollwood. Thus,

Plaintiffs request this Court deny Defendant's Motion to Dismiss and allow

their case to proceed to discovery.

Dated this 5th day of May, 2022.

BEARDSLEY, JENSEN & LEE,
Prof. L.L.C

By: *Steven C. Beardsley*

*Conor P. Casey*

Steven C. Beardsley
Conor P. Casey
4200 Beach Drive, Suite 3
P.O. Box 9579
Rapid City, SD  57709
Telephone: (605) 721-2800
Facsimile: (605) 721-2801
Email: sbeards@blackhillslaw.com
ccasey@blackhillslaw.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of May, 2022, a true and correct copy
of the foregoing has been served on the following by the following means:

| Robert B. Anderson | [ ] | First Class Mail |
| Justin L. Bell | [ ] | Hand Delivery |
| May, Adam, Gerdes & Thompson, LLP | [X] | CM/ECF Filing System |
| PO Box 160 | [ ] | Electronic Mail |
| Pierre, SD 57501-0160 | | |
| rba@mayadam.net | | |
| jlb@mayadam.net | | |

*Steven C. Beardsley*
Steven C. Beardsley