IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| DWAYNE MILNE AND JACLYNN PAUL AS GUARDIANS OF B.M., <br><br> Plaintiff, <br><br> vs. <br><br> DR. GREG GADEN, REBECCA LEEDS, HOLLIE HOFFMAN, CHARLIE SERSEN, KARN BAKER, BROOKE CHENEY, JAIMIE MUTTER, LEAH LUDWIG, JESSICA CULLUM, UNKNOWN STAFF AT KNOLLWOOD ELEMENTARY, DR. LORI SIMON, RAPID CITY AREA SCHOOL DISTRICT, RAPID CITY SCHOOL BOARD, SOUTH DAKOTA DEPARTMENT OF EDUCATION, <br><br> Defendants. | File No. 22-CV-5017-LLP <br><br><br> **Memorandum in Support of RCASD Defendants' Motion to Dismiss** |

Defendants, Dr. Greg Gaden, Rebecca Leeds, Hollie Hoffman, Charlie Sersen, Karn Baker, Brooke Cheney, Jaimie Mutter, Leah Ludwig, Jessica Cullum, Unknown Staff at Knollwood Elementary, Dr. Lori Simon, Rapid City Area School District, and Rapid City School Board (hereinafter "RCASD Defendants"), by and through their attorneys of record, respectfully submit this *Memorandum in Support of RCASD Defendants' Motion to Dismiss*.

Page 1 of 17

Milne v. Gaden, et al.                                                    RCASD Defs' Memo ISO Mtn to Dismiss
22-CV-5017-LLP

## Background

As stated in Plaintiff's *Amended Complaint*[1] the minor child B.M. attended school at Francis Case Elementary School in the Douglas School District in the 2017-18 school year.  Doc. 11, *Amended Complaint*.

He transferred to the Rapid City Area School District (hereinafter "District") and was enrolled at Knollwood Elementary School on or about August 28, 2019.  *Id.* at ¶38.  B.M. was subsequently withdrawn from the District by his parents on October 7, 2019.  *Id.* at ¶71.  Contrary to the allegation contained in Plaintiff's *Amended Complaint*, B.M. did return to the District on September 2, 2020, and is currently enrolled at Valley View Elementary School.

B.M. had previously been diagnosed with Autism Spectrum Disorder, ADHD, Insomnia, and restless leg syndrome.  While at Douglas, B.M. had been evaluated and an Individual Education Plan ("IEP") was developed for him.  *Id.* at ¶¶ 28, 34.

On September 5, 2019, the mother of B.M., Jaclynn Paul, met with District officials to review and develop an amendment to B.M.'s IEP.  In that meeting, the parties developed and agreed upon a Positive Behavior Intervention Plan that provided:

> When B. feels that he is not in control of the situation, he refuses options, runs out of safe areas, kick (sic) objects and people, throws items, screams, scratches, and hits people and objects.  These behaviors last from 4 minutes to 4 hours and occur in all settings.

---

[1] A motion for a second amended complaint has been filed, but has not been served on counsel for the RCASD Defendants.

The Plan continues:

> If B. becomes physically aggressive to include hurting himself or hurting others Emergency Safety Physical Interventions (ESPI's) may be utilized as a last resort. Parents will be contacted in any serious situation should occur that results in the use of an ESPI or suspension.

Jaclynn Paul, along with the other attendees at the meeting, signed off on the IEP Amendment and the Positive Behavior Intervention Plan.

After withdrawing B.M. from the District, the parents on December 3, 2019, filed a complaint with the South Dakota Department of Education.[2] In their complaint, they alleged that the District's use of restraint and seclusion violated the provisions of the Individuals with Disabilities Education Act ("IDEA") which denied B.M. of free appropriate public education. Specifically, they alleged that:

- Teachers did not follow B.'s IEP.
- IEP states, "Administrative action may be taken, depending on the severity of the incident. A modified General Education Discipline Matrix may be utilized. This is per administrator's discretion. No place on the Matrix or the IEP does it state that they will imprison my son into a make-shift cattle pen."
- The IEP states, "Parents will be contacted in any serious situation should occur that results in the use of an ESPI or suspension. When Jaclynn stopped in on [October] 7th to drop B.'s backpack off at 9 in the morning he was already locked in the pen from the start of the school day. We were not contacted. Also, ESPI was not explained to us. We thought it was a gentle restraint, not an enclosure."

    [On October 4, 2019,] I went to pick up B. at Knollwood Elementary School. Upon arrival at the classroom there was a

---

[2] *See* Exhibit 1 to the *RCASD Defendants' Motion to Take Judicial Notice*.

Page 3 of 17

Milne v. Gaden, et al.                                    RCASD Defs' Memo ISO Mtn to Dismiss
22-CV-5017-LLP

> sign on the door that read: Classroom Closed Under Construction. The door was locked, and I heard a commotion inside. I looked through the window and saw 4 adults leaning over a large steel item. . . . I knocked on the door. They opened the door, let me in, and I asked where my son, B., was. They looked at each other for a second, and then told me he was behind the makeshift enclosed cattle pen. I looked over and he was on the floor crying and looked scared to death.
>
> I then removed B. from the classroom and brought him home. He had a rough weekend, he wouldn't tell us why, but we know it was due to his treatment at school.

Exhibit 1, pgs. 4-5. The complaint continues:

> On Monday, October 7th, we drove B back to school. My wife, Jaclynn, forgot some of his items and brought them to school at 9 a.m. When she arrived at the classroom, she had to knock on the door because it was locked. When she asked where B. was, she was told he was behind the cattle pen again and had been there since the start of school. She removed B. and brought him home. She called me. I in turn contracted Linda Turner. We had a long conversation. She asked me to go back to the school that afternoon and ask the teachers and paras, along with the principal's office, for copies of B.'s IEP, which they could not provide.
>
> I was told by the paras and teacher that they not only did not know where it was at, but they had never read it. The principal's office couldn't provide any answers as to where it was and why they didn't have a copy either.

*Id.* at 5. In support of their complaint, the parents submitted B.M.'s IEP and the pictures taken of the enclosure/cattle pen. They requested that the following items in B.M.'s IEP be changed:

> I would like to see proper training for the teachers and paras.
> I would like to see B.'s goals met.
> I would like to see commitment from all the teachers and paras,

Page 4 of 17

Milne v. Gaden, et al.                                    RCASD Defs' Memo ISO Mtn to Dismiss
22-CV-5017-LLP

> I would like to see a Positive Behavior Plan written by the IEP team, which includes my wife and I, that would be implemented by every individual works with B.

*Id.* at 6.

Thereafter, the Department appointed an investigator who conducted interviews with the parents, District officials, and the Rapid City Police Department. The Department issued a Complaint Investigation Report and Written Report of Final Decision on February 3, 2020.[3] The Report contains several findings, including the dates and nature of the restraints that were used and the dates and times when seclusions were utilized. The Department also noted in finding 36 that:

> Parents alleged that the student was forcibly dragged into the seclusion area that they referred to as a "makeshift cattle pen." The incidents on October 4, and 7, 2019 were investigated by the police department and are under investigation by the county sheriff.[4] The police, in their report, did not find any evidence of abuse by the school.

Exhibit 2, pg. 8.

Thus, it is beyond dispute that the parents alleged that the restraint and seclusion of B.M. constituted a violation of the Individuals with Disabilities Education Act, which resulted in the denial of free appropriate public education. They make these same allegations in this action, but now they shift their litigation strategy and seek damages which were not available under IDEA. As detailed below, that shift in strategy does not negate the requirement to exhaust administrative remedies.

---

[3] See Exhibit 2 to the *RCASD Defendants' Motion to Take Judicial Notice*.

[4] The Sheriff's office also found no evidence of abuse.

Page 5 of 17

Milne v. Gaden, et al.　　　　　　　　　　　　　　RCASD Defs' Memo ISO Mtn to Dismiss
22-CV-5017-LLP

# Argument

## 1.   Applicable Legal Standard.

The legal standard applicable to motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is as follows:

> [U]nder Rule 12(b)(6), [the] court assumes all facts in the Complaint to be true and construes all reasonable inferences from those facts most favorable to the complainant. Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." "Threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice."

*Minn. Majority v. Mansky,* 706 F.3d 1051,1055 (8th Cir. 2013); (*quoting Bell Atl. Corp v. Twombly.* 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

Moreover, a rule 12(b)(1) motion to dismiss can be treated in the same manner as a motion under 12(b)(6) depending upon the type of attack made by the moving party:

> "The existence of subject-matter jurisdiction is a question of law that this court reviews *de novo.*" *ABF Freight Sys. Inc. v. Int'l Bhd. of Teamsters,* 645 F.3d 954, 958 (8th Cir. 2011). "A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack'" on jurisdiction." *Osborn v. United States,* 918 F.724, 729 n.6 (8th Cir. 1990). In a facial attack, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Id.* (internal citations omitted). "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." *Id.* (internal citations omitted). The method in which the district court resolves a Rule 12(b)(1) motion – that is, whether the district court treats the motion as a facial attack or a factual

Page 6 of 17

Milne v. Gaden, et al.                                            RCASD Defs' Memo ISO Mtn to Dismiss
22-CV-5017-LLP

attack – obligates us to follow the same approach. *BP Chemicals Ltd. v. Jiangsu Sopo Corp.* 285 F.3d 677, 680 (8th Cir. 2002).

*Carlson v. GameStop Inc.,* 833 F.3d 903, 908 (8th Cir. 2016). Determining whether a claim has facial plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *United States v. Big Crow,* No. 2916 WL 884901 (D.S.D. Mar. 2, 2016) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L.Ed2d 868 (2009)).

Under this standard, this Court lacks subject matter jurisdiction to hear and consider Plaintiffs' *Amended Complaint* on its face with judicially noticed facts and the *Amended Complaint* fails to state a claim against the RCASD Defendants.

## 2. Plaintiffs' Claims are Time Barred.

As stated above, the South Dakota Department of Education rendered its decision on parents' Complaint on February 3, 2020. The original *Complaint* in this federal lawsuit was filed on February 17, 2022, more than two years after the alleged allegations and final decision of the IDEA administrative complaint. While the *Amended Complaint* purports to seek compensatory damages, the gravamen of the suit remains the same – the denial of free appropriate public education. Accordingly, the *Amended Complaint* is time barred under 20 U.S.C. § 1415(b),(g),(i)(2)(A)-(B) and this action must be dismissed.

The purpose of IDEA is to ensure that "[a]ll children with disabilities have available to them a free appropriate public education." 20 U.S.C. §

1400(d)(l)(A) ("FAPE"). Within the IDEA, Congress established procedural safeguards to ensure individuals will have the opportunity to obtain that FAPE. 20 U.S.C. § 1415(a). Those procedural safeguards include the development of an Individualized Education Program (IEP) by a multi-disciplinary team, as well as the opportunity for any party to present a complaint concerning any aspect of the local agency's provision of a free appropriate public education and the right to an impartial due process hearing on such complaints. 20 U.S.C. § 1415(b)(6),(f). Parents or guardians may challenge the outcome of the complaint procedure first before the state educational review agency, and then before any state or district court within "90 days from the date of the decision of the hearing officer[.]" 20 U.S.C. § 1415(b),(g),(i)(2)(A)-(B). Administrative exhaustion is a requirement prior to filing a state or federal court proceeding. 20 U.S.C. § 1415(i)(2)(A),(l); *J.M. Francis Howell Sch. Dist.*, 850 F.3d at 947; *Smith v. Rockwood R-VI Sch. Dist.*, 895 F.3d at 568.

Section 1415 of the IDEA recognizes the existence of other laws designed to protect children with disabilities. That section states in part, "[n]othing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, Title V of the Rehabilitation Act of 1973, or other Federal laws ...." 20 U.S.C. § 1415(l). However, the statute goes on to state: "before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this part." *Id.* Consequently, IDEA's exhaustion requirements apply to claims under the Constitution, the ADA, the Rehabilitation Act, 42

U.S.C. § 1983, and other federal laws protecting children with disabilities to the extent those claims seek relief also available under the IDEA. *Fry v. Napoleon Community Schools, et. al.*, 580 U.S. __, 137 S.Ct. 743, 754, at *8 (U.S. 2017).

In *Fry v. Napoleon Community Schools, et al.*, the United States Supreme Court affirmed the need for parties to fulfill the administrative exhaustion requirement prior to filing a lawsuit and set forth the scope of that requirement. 580 U.S. __, 137 S.Ct. 743 (2017). The *Fry* Court determined that the question of exhaustion "hinges on whether a lawsuit seeks relief for the denial of a [FAPE]. If a lawsuit charges such a denial, the plaintiff cannot escape § 1415(l) merely by bringing her suit under a statute other than the IDEA." 137 S.Ct. 743, 754. "[I]n determining whether a suit indeed 'seeks' relief for such a denial, a court should look to the substance, or gravamen, of the plaintiff's complaint." 137 S.Ct. 743, 752. There are no magic words and the labels assigned by a plaintiff are not determinative. 137 S.Ct. 743, 755. The inquiry does not rest on whether a complaint includes words like FAPE or IEP, or whether it invokes the IDEA at all. *Id.* The proper inquiry is "if [they are] in essence contesting the adequacy of a special needs program." *Id.* The *Fry* Court also reasoned:

> A further sign that the gravamen of a suit is the denial of a FAPE can emerge from the history of the proceedings. In particular, a court may consider that a plaintiff has previously invoked the IDEA's formal procedures to handle the dispute–thus starting to exhaust the Act's remedies before switching midstream. Recall that a parent dissatisfied with her child's education initiates those administrative procedures by filing a complaint, which triggers a preliminary meeting (or possibly mediation) and then a due process hearing. *See supra*, at__ -__, 197 L. Ed. 2d, at 54-55. A plaintiff's initial choice to pursue that process may suggest that

Page 9 of 17

Milne v. Gaden, et al.     RCASD Defs' Memo ISO Mtn to Dismiss
22-CV-5017-LLP

> she is indeed seeking relief for the denial of a FAPE–with the shift to judicial proceedings prior to full exhaustion reflecting only strategic calculations about how to maximize the prospects of such a remedy. Whether that is so depends on the facts; a court may conclude, for example, that the move to a courtroom came from a late-acquired awareness that the school had fulfilled its FAPE obligation and that the grievance involves something else entirely. **But prior pursuit of the IDEA's administrative remedies will often provide strong evidence that the substance of a plaintiff's claim concerns the denial of a FAPE, even if the complaint never explicitly uses that term.** (Emphasis supplied.)

137 S.Ct. at 745.

The Eighth Circuit Court of Appeals has recognized the IDEA exhaustion requirements and the practical purposes exhaustion serves. As cautioned by the Court in *JB v. Avilla R-XIII Sch. Dist.*, "judges are not trained educators ... and we are cautioned not to substitute our 'own notions of sound educational policy for those of the school authorities which [we] review.'" 721 F.3d 588, 594 (8th Cir. 2013) (citing *E.S. v. Indep. Sch. Dist. No. 196*, 135 F.3d 566, 569 (8th Cir. 1998) and *Bd. Of Educ. v. Rowley*, 458 U.S. 176, 205-06, 102 S. Ct. 3034, 73 L.Ed. 2d 690 (1982)).

The seminal decision in the Eighth Circuit is *JM v. Francis Howell School District,* 850 F.3d 944 (8th Cir. 2017). In that case, the Court ruled that administrative exhaustion was required for a complaint alleging a school repeatedly placed a student in physical restraints and isolation. 850 F.3d 944 (8th Cir. 2017). In *J.M.*, the mother brought suit on behalf of her minor son seeking damages arising from the repeated use of isolation and physical restraints without her knowledge over a two-year period. *Id.* at 947. Upon learning of this, she immediately contacted the school district, requesting the use of restraints only when necessary and no isolation. *Id.* Apparently

Page 10 of 17

Milne v. Gaden, et al.      RCASD Defs' Memo ISO Mtn to Dismiss
22-CV-5017-LLP

dissatisfied with the school district's response, the minor child was removed from the school district and the family sued in federal court under the IDEA, 42 U.S.C. §§ 1983 and 1988, and Missouri common law asserting torts of negligence, false imprisonment, and battery. *Id*. An Amended Complaint asserted claims under the Equal Protection Clause, 42 U.S.C. §§ 1983 and 1988, the ADA, § 504 of the Rehabilitation Act of 1973, and the Missouri Human Rights Act. *Id*. Damages sought included compensatory damages for past physical injuries and damages related to the child suffering post-traumatic stress disorder arising from the alleged mistreatment at school. *See*, *McCauley v. Francis Howell School District*, No. 4:15-CV-866 NAB, 2016 U.S. Dist. LEXIS 24947, *5, 2016 WL 795804 (E.D.Mo. March 1, 2016), aff'd, *J.M v. Francis Howell Sch. Dist.*, 850 F.3d 944 (8th Cir. 2017).

The school district moved to dismiss, alleging lack of subject matter jurisdiction for failure to exhaust administrative remedies under the IDEA. Plaintiff argued her amended claims were not brought under the IDEA and thus not subject to exhaustion, but the district court disagreed, granting the school district's motion to dismiss. *Id*. The Eighth Circuit Court of Appeals upheld the dismissal, finding it significant that the Amended Complaint specifically stated the child was entitled to "educational services" and "accommodations" for his disabilities, was denied those benefits because of his disabilities, and complained of the child being placed in physical restraints and isolation: all of which related to the child's education. *Id*. at 948-49. The *J.M.* Court further found it significant that the plaintiff did not allege any common law torts as the foundation for any non-educational injuries in the Amended Complaint and alleged the child's injuries resulted

from defendants' use of restraint and isolation in violation of their own policies as a disciplinary tool. *Id.* (emphasis added).

A similar result was reached in *Smith v. Rockwood R-VI School District,* 895 F.3d 566 (8th Cir. 2018). In this case the disabled student who was covered by an Individualized Education Plan was suspended from school for ten days. Following the suspension, a manifestation hearing was held which concluded that the student's suspension was for conduct that manifested from his disability. Accordingly, the student was to be readmitted to school or have his placement changed based on a modification of his behavior intervention plan. Notwithstanding that determination, the school district's Superintendent notified the student that he was suspended out of school for an additional 180 days. This resulted in the parents filing a due process complaint which was ultimately resolved, and the parents voluntarily dismissed their due process complaint.

Following this dismissal, the parents brought suit in federal district court, which dismissed the action because the plaintiffs had not properly exhausted their administrative remedies under IDEA. On appeal, the plaintiffs argued, like the plaintiffs in the present case, that their claims under the Rehabilitation Act and § 1983 alleged disability discrimination, not the denial of a free appropriate public education and that they were seeking money damages – a remedy not authorized by the IDEA.

The Court rejected that argument. In so doing, the Court noted that under *Fry*, a "prior pursuit of the IDEA's administrative remedies will often provide strong evidence that the substance of a plaintiff's claim concerns the

Page 12 of 17

Milne v. Gaden, et al.              RCASD Defs' Memo ISO Mtn to Dismiss
22-CV-5017-LLP

denial of a public education, even if the complaint never explicitly uses the term." *Id. at 569.* In affirming the dismissal, the court stated:

> Although the Supreme Court declined to address this issue in *Fry* (the issue that exhaustion does not apply to claims seeking money damages) our precedent is clear 'that the IDEA's exhaustion requirement remains the general rule, regardless of whether the administrative process offers the particular type of relief that is being sought.' (Citations omitted.)

*Id.*

The facts alleged in Plaintiffs' *Amended Complaint* are nearly identical to those alleged in *J.M.* In *J.M*, Plaintiffs' Complaint repeatedly references the objectionable restraint, disciple, and seclusion, or its overuse, as discipline. It is clear from the procedural history of this case that Plaintiffs' view the gravamen of the suit to be denial of a FAPE. Here they filed an IDEA complaint alleging restraint and seclusion which were not authorized by B.M.'s IEP, which resulted in an administrative final decision before the South Dakota Department of Education. *See RCASD Defendants' Motion to Take Judicial Notice* at Exhibits 1 and 2.

In the present case, the *Amended Complaint* makes repeated references to the procedural safeguards to ensure B.M. entitlement to obtain a FAPE, including the development of an Individualized Education Program (IEP), a functional behavior assessment (FBA), a behavior intervention plan (BIP), and Emergency Safety Physical Interventions (ESPI). All of these concepts and procedural safeguards were discussed between Jaclynn Paul and the District.

It is clearly apparent that the *Amended Complaint* is an effort to avoid the Statute of Limitations argument by removing the IDEA count and references

Page 13 of 17

Milne v. Gaden, et al.  RCASD Defs' Memo ISO Mtn to Dismiss
22-CV-5017-LLP

to that statute. It must be remembered the Court's admonishment that the abandonment of IDEA procedures as a litigation strategy to maximize financial gain does not absolve a parent of the need to exhaust.

However, removal of the IDEA count does not cure the fact that the remaining counts in this action remain time barred. While the Eighth Circuit has not specifically addressed whether the statute of limitation found in 20 USC § 1415(f) applies to § 1983, ADA, and § 504 claims where the gravamen of a suit is the denial of a FAPE and the plaintiff filed an administrative IDEA complaint on that basis prior to the federal action, other courts have decided that issue.

In *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, the Court affirmed the dismissal of ADA, Rehabilitation Act, and IDEA claims pursuant to the 90-day statute of limitations found in Section 1415(i)(2)(B) of the IDEA. A similar result was reached in *D v. Southington Bd. of Educ.*, 119 F. Supp. 2d 105, 115-16 (D. Conn. 2000), where the Court stated:

> Title 20 U.S.C. § 1415(f) states that
>
>> nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 790 et seq.], or other Federal statutes protecting the rights of handicapped children and youth, *except that* before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (b)(2) and (c) of this section *shall* be exhausted to the same extent as would be required had the action been brought under this subchapter.
>
> 20 U.S.C. § 1415(f) (emphasis added). Since the plaintiff's instant claims arise out of the same set of facts as their IDEA

Page 14 of 17

Milne v. Gaden, et al.  RCASD Defs' Memo ISO Mtn to Dismiss
22-CV-5017-LLP

> claims, they are subject to the underlying administrative proceeding and judicial review of the IDEA claims.
>
> The court has already determined the plaintiffs' IDEA claims are time-barred. Any Rehabilitation Act claims plaintiffs may attempt to bring now should not be heard by the court. To the extent that the plaintiffs Rehabilitation Act claims arise out of the same facts alleged under the IDEA claims, they are subject to the same statute of limitation preclusion applied to the IDEA claims. To the extent that they may involve facts not brought up under the hearing under the IDEA, they should be the subject matter of an administrative proceeding before being reviewed by the court. *See Hope v. Cortines*, 872 F. Supp. 14, 19 (E.D.N.Y. 1995) (discussing effect of failure to exhaust administrative remedies under the IDEA).

*Id.* at 115-16; *See also I.M v. Northampton Pub. Sch.*, 869 F. Supp. 2d 174, 187 (D. Mass. 2012) ("when the underlying ADA claim is read most accurately as a denial of FAPE, the exhaustion requirements of the IDEA remain a necessary precursor to any action in federal court …. Such action must be brought within 90 days of a final administrative decision."); *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247 (3d Cir. 2014) (favorably citing *I.M v. Northampton Pub. Sch.* and affirming dismissal of ADA, Rehabilitation Act, and IDEA claims pursuant to 90-day statute of limitation found in IDEA's §1415(i)(2)(B)).

While it is clear that the IDEA does not preclude causes of action under 18 USC § 1983, the Americans with Disabilities Act (ADA), § 504 of the Rehabilitation Act of 1973, it does apply the underlying administrative proceeding requirements, including the statute of limitations, to those statutes. This result is consistent with the rationale behind the adoption of the IDEA. In *Strawn v. Missouri State Board of Education*, the Court explained that federal policy required "expeditious resolution of IDEA

Page 15 of 17

Milne v. Gaden, et al.  RCASD Defs' Memo ISO Mtn to Dismiss
22-CV-5017-LLP

concerns" to prevent the "substantial harm" of lost education on the part of students. *Id. See also Murphy v. Timberlane Regional Sch. Dist.*, 22 F.3d 1186, 1193-94 (1st. Cir. 1994) (holding a core tenet of IDEA was to ensure students are not forced to lose "day after irreplaceable day of educational opportunity mandated by law."). The same policy concerns apply to allowing excess delay to any claim where the gravamen of a suit is the denial of a FAPE. Accordingly, as the administrative decision in this case was issued well before 90-days prior to the filing of this action, the claim is time barred.

## Conclusion

Based on the forgoing, the RCASD Defendants respectfully request that the Court **GRANT** this motion and dismiss the action in its entirety as to the RCASD Defendants.

Dated this 9th day of June, 2022.

> BANGS, MCCULLEN, BUTLER,
> FOYE & SIMMONS, L.L.P.
>
> BY: */s/ Michael M. Hickey*
>     MICHAEL M. HICKEY
>     SARAH BARON HOUY
>     ERIN SCHOENBECK BYRE
>     333 West Boulevard, Suite 400
>     P.O. Box 2670
>     Rapid City, SD 57709-2670
>     (605) 343-1040
>     mhickey@bangsmccullen.com
>     sbaronhouy@bangsmccullen.com
>     erin@bangsmccullen.com
>     ***ATTORNEYS FOR RCASD DEFENDANTS***

## CERTIFICATE OF SERVICE

The undersigned certifies that on June 9, 2022, he caused a true and correct copy of the above to be served upon the person identified below as follows:

    [ ]    First Class Mail    [ ]    Overnight Mail

    [ ]    Hand Delivery    [ ]    Facsimile

    [ ]    Electronic Mail    [X]    ECF System

Steven C. Beardsley / Conor P. Casey / Elliot J. Bloom
BEARDSLEY, JENSEN & LEE, PROF. LLC
4200 Beach Drive, Suite 3
PO Box 9579
Rapid City, SD  57709
sbeards@blackhillslaw.com
ccasey@blackhillslaw.com
ebloom@blackhillslaw.com
*ATTORNEYS FOR PLAINTIFFS*

Robert B. Anderson / Justin L. Bell
MAY, ADAM, GERDES & THOMPSON LLP
503 South Pierre Street
Pierre, South Dakota 57501-0160
rba@mayadam.net
jlb@mayadam.net
*ATTORNEYS FOR DEFENDANT DOE*

                        */s/ Michael M. Hickey*
                        MICHAEL M. HICKEY

Page 17 of 17

Milne v. Gaden, et al.                    RCASD Defs' Memo ISO Mtn to Dismiss
22-CV-5017-LLP