UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| DWAYNE MILNE and JACLYNN PAUL, as Guardians of B.M., | **5:22-CV-5017-LLP** |
| Plaintiffs, | **MEMORANDUM OPINION AND ORDER** |
| vs. | |
| DR. GREG GADEN, in his individual and official capacity; REBECCA LEEDS, in her individual and official capacity; HOLLI HOFFMAN, in her individual and official capacity; CHARLIE SERSEN, in his individual and official capacity; KARN BAKER, in her individual and official capacity; BROOKE CHENEY, in her individual and official capacity; JAIMIE MUTTER, in her individual and official capacity; LEAH LUDWIG, in her individual and official capacity; JESSICA CALLUM, in her individual and official capacity; UNKNOWN STAFF AT KNOLLWOOD ELEMENTARY, in their individual and official capacity; DR. LORI SIMON, in her individual and official capacity; UNKNOWN STAFF AT RAPID CITY AREA SCHOOL DISTRICT, in their individual and official capacity; UNKNOWN STAFF AT RAPID CITY SCHOOL BOARD, in their individual and official capacity; and UNKNOWN STAFF AT SOUTH DAKOTA DEPARTMENT OF EDUCATION, in their individual and official capacity, | |
| Defendants, | |

On February 17, 2022, Plaintiffs Dwayne Milne and Jaclynn Paul, as guardians of B.M., ("Plaintiffs") filed the instant action.  (Doc. 1.)  Plaintiffs sued the Defendants for violations of 18 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), § 504 of the Rehabilitation Act of 1973 ("Rehab Act"), and Plaintiffs invoked supplemental jurisdiction to allege various state law claims.

1

## PROCEDURAL BACKGROUND

The initial Complaint included a claim under the Individuals with Disabilities Education Act ("IDEA"). (Doc. 1,    21 and Count IX). On February 28, 2022, Plaintiffs filed a First Amended Complaint.[1] (Doc. 11.)   The First Amended Complaint deleted the claim under the IDEA but retained the other claims. (*Id*.)

The South Dakota Department of Education ("Department") filed a motion to dismiss the First Amended Complaint, based in part on Eleventh Amendment immunity. (Docs. 19, 20.) Then, Plaintiffs filed a motion to amend. (Doc. 24.) The proposed Second Amended Complaint struck the South Dakota Department of Education from the caption and added "Unknown Staff" at the Department "in their individual and official capacity." (Doc. 24-1.) It also added a new allegation that "Upon information and belief, the South Dakota Department of Education, Rapid City Area School District, and Rapid City School Board were put on notice of the abusive and discriminatory policies in place at Knollwood Elementary School prior to the events that gave rise to this lawsuit, but failed to take corrective action." (Doc. 24-1,    73.) The Department urged the Court to deny leave to file the Second Amended Complaint, but the Court exercised its discretion to allow the amendment. (Doc. 44.) The Department's motion to dismiss was denied as moot. (*Id*.)

Before the Court ruled on Plaintiffs' motion to amend the First Amended Complaint, the Rapid City Area School District Defendants ("RCASD") filed a motion to dismiss the First Amended Complaint, arguing that it was untimely and barred by the IDEA's 90-day time period to file a civil action challenging an adverse administrative decision on the IDEA claim. (Docs. 35, 36.) RCASD also moved the Court to take judicial notice of Plaintiffs' administrative complaint filed with the Department of Education, as well as the final decision issued by the Department in the administrative proceedings. (Doc. 37.) At the time of RCASD's motion to dismiss, Plaintiffs were represented by counsel, and a brief with legal authority opposing RCASD's motion to dismiss was submitted. (Doc. 39.)

Shortly thereafter, Plaintiffs filed a notice of termination of their lawyers. (Doc. 40). Then, Plaintiffs' lawyers moved to withdraw as counsel of record due to "an irreversible

---

[1]

 Plaintiffs' First Amended Complaint was filed as a matter of course within 21 days after serving the original complaint. *See* Fed. R. Civ. P. 15(a)(1)(A).

breakdown of the relationship between counsel and the Plaintiffs." (Doc. 41.) The motion to withdraw was granted on August 10, 2022. (Doc. 47.)

The Second Amended Complaint was filed on November 16, 2022. (Doc. 53.) Defendants, Unknown Staff at South Dakota Department of Education ("Department"), filed a motion to dismiss the Second Amended Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), or for failure to state a claim pursuant to Rule 12(b)(6). (Doc. 56.) Department's first argument in support of dismissal is identical to RCASD's argument: that the claims in Plaintiffs' lawsuit are untimely and barred by the IDEA's 90-day time period to file a civil action challenging an adverse administrative decision on an IDEA claim. (Doc. 57.) Department also asked the Court to take judicial notice of the existence of the final decision issued by the Department of Education in the administrative proceedings. (Doc. 58.)

In response to the Department's motion to dismiss the Second Amended Complaint, Plaintiffs, proceeding pro se, filed a short motion asking the Court not to dismiss this case, but they cited no legal authority. (Doc. 60.) Plaintiffs also have requested assistance from the Court to obtain an "as-litem." (Doc. 50.)

## FACTUAL BACKGROUND

In their opposition to RCASD's motion to dismiss, at a time when Plaintiffs were represented by counsel, Plaintiffs summarized the factual allegations in their Complaint:

> At the time of the events that underly this lawsuit, B.M. was an 8-year-old boy who was 4' tall and weighed 65 lbs. (*Id.* at ¶ 27.) B.M. is diagnosed with Autism Spectrum Disorder, ADHD, Insomnia, and restless leg syndrome by Dr. April Levin of the Autism Spectrum Center/Department of Neurology of Boston Children's Hospital, in Boston, Massachusetts. (*Id.* at ¶ 28.) B.M. was in a third-grade student at Knollwood Elementary School in Rapid City, South Dakota (the school and all staff associated with Knollwood will be collectively herein referred to as "Knollwood"). (*Id.* at ¶ 29.) B.M had an Individualized Education Plan ("IEP") developed to accommodate his disabilities. (*Id.* at ¶¶ 34 and 39.) The IEP addressed specific areas of learning and non-learning, which B.M. required additional attention or help. (*Id.* at ¶¶ 35-37.) The IEP did not include permissive use of any method of restraint or seclusion. (*Id.*) Knollwood was acutely aware of the specific indicia of B.M.'s IEP. (*Id.* at ¶ 39.)

On September 4, 2019, B.M. was excited to get into Knollwood and begin school and attempted to enter Knollwood before the rest of his class. (*Id*. at ¶ 43.) Becky Leeds ("Leeds"), who was part of the staff at Knollwood, tackled, assaulted, and restrained B.M. (*Id*.) Later that day, B.M. attempted to leave Knollwood before school was over for the day. (*Id*. at ¶ 45.) While attempting to leave, B.M. was assaulted and restrained by Hollie Hoffman ("Hoffman"), Charlie Sersen ("Sersen"), Karn Baker ("Baker"), and Brooke Cheney ("Cheney"). (*Id*.)

Following the September 4, 2019, assault and restraint of B.M., on September 5, 2019, Knollwood held an IEP meeting to address a new behavioral intervention plan ("BIP") for B.M. (*Id*. at ¶ 48.) Within the BIP plan, restraint methods were allowed, but "only as a last resort." (*Id*. at ¶ 49.) The BIP did not describe what restraint methods could or should be use or when they could be used. (*Id*. at ¶ 50.) The BIP did not allow for any permissive use of methods of seclusion. (*Id*. at ¶ 51.) In the event B.M. was restrained for any reason, B.M.'s parents, Dwayne Milne and Jaclynn Paul, would be contacted immediately. (*Id*. at ¶ 52.)

Within Knollwood, there was an area used for de-escalation and seclusion colloquially referred to as "Hawaii." (*Id*. at ¶ 53.) "Hawaii" was located in the corner of an empty classroom and resembled a cattle pen. (*Id*. at ¶¶ 54- 55.) "Hawaii" was walled off by three five-foot-high dividers. (*Id*. at ¶ 55.) B.M.'s IEP did not allow for permissive use of seclusion in "Hawaii" for any reason. (*Id*. at ¶¶ 32-34.)

Following the September 5, 2019, IEP meeting, B.M. was assaulted, caged, and secluded on numerous occasions:

• On September 13, 2019, Jamie Mutter ("Mutter") and Baker assaulted, caged, and secluded B.M. in "Hawaii" for 34 minutes (*Id*. at ¶¶ 57-59);

• On September 24, 2019, Mutter and Sersen assaulted, caged, and secluded B.M. in "Hawaii" on two separate occasions, for 20 and 25 minutes, respectively (*Id*. at ¶ 60-63);

• On September 25, 2019, Mutter, Sersen, and Cheney assaulted, caged, and secluded B.M. in "Hawaii" for 24 minutes (*Id*. at ¶ 64);

• On September 30, 2019, Sersen, Cheney, Mutter, and Leah Ludwig ("Ludwig") assaulted, caged, and secluded B.M. in "Hawaii" on two separate occasions for 13 and 25 minutes, respectively (*Id*. at ¶ 65);

• On October 3, 2019, Mutter, Hoffman, Ludwig, Sersen, Baker, and Jessica Cullum ("Cullum") assaulted, caged, and secluded B.M. in "Hawaii" on two separate occasions for 20 and 10 minutes, respectively (*Id*. at ¶ 66); and,

• On October 4, 2019, Mutter, Sersen, and Baker assaulted, caged, and secluded B.M. in "Hawaii" for 20 minutes. (*Id*. at ¶ 67.)

At no point following the September 5, 2019, IEP meeting were Dwayne Milne and Jaclynn Paul notified of any of the abusive events their child endured. (*Id*. at ¶ 72.)

On October 4, 2019, Dwayne Milne went to Knollwood to pick up B.M. (*Id*. at ¶ 68.) Upon entering and searching Knollwood for B.M., Dwayne Milne found B.M. caged and secluded in "Hawaii." (*Id*.) B.M. was distraught and curled up on the floor of the makeshift animal pen crying. (*Id*.)

On October 7, 2019, Mutter, Sersen, and Cullum assaulted caged, and secluded B.M. in "Hawaii for 20 minutes. (*Id*. at ¶ 69.) On the same day, Jaclynn Paul went to Knollwood to drop off some items B.M. had forgotten. (*Id*. at ¶ 70.) After entering and searching Knollwood for B.M., Jaclynn Paul found B.M. caged and secluded in "Hawaii." (*Id*.) On the same day, Dwayne Milne and Jaclynn Paul immediately removed B.M. from enrollment at Knollwood. (*Id*. at ¶ 71.)

(Doc. 23, pp. 3–6.)

## ADMINISTRATIVE PROCEEDINGS

On December 5, 2019, Plaintiffs filed an IDEA complaint against the Rapid City Area School District ("School District") with the South Dakota Department of Education, Special Education Programs.  In their administrative complaint, Plaintiffs alleged that the School District inappropriately secluded B.M., failed to follow B.M.'s IEP or have a positive behavior plan, and failed to communicate with B.M.'s parents.  In response to the section of the complaint entitled "What would you like to see changed?," Plaintiffs wrote:

I would like to see proper training for the teachers and paras.

I would like to see B's goals met.

I would like to see commitment from all the teachers and paras.

I would like to see a Positive Behavior Plan written by the IEP team, which includes my wife and I, that would be implemented by every individual that works with B.

(Doc. 37-1.)  A final decision was issued by the Department of Education on February 3, 2020, finding violations of the IDEA by the School District that resulted in denial of a FAPE for B.M., and requiring the School District to take a number of corrective actions. (Doc. 37-2.)   In their initial Complaint filed in this Court, Plaintiffs described the February 3, 2020 administrative decision:  "[T]he Department of Education found, on the basis of Dwayne Milne and Jaclynn Paul's complaint and interviews with relevant

parties, that Knollwood Elementary violated IDEA on multiple grounds and failed to ensure that B.M receive a free appropriate public education." (Doc. 1, p. 10,   75.)  There is no indication that the School District sought review of the administrative decision pursuant to 29 U.S.C. §1415(i)(2) which provides for a right of "[a]ny party *aggrieved by the findings and decision*" of the administrative proceedings to bring a civil action in state or federal court.  20 U.S.C. § 1415(i)(2) (emphasis added).

## LEGAL ANALYSIS

### Dismissal based on Statute of Limitations

The Department defendants' motion to dismiss based on the 90-day IDEA statute of limitations is somewhat confusing. In their motion to dismiss, the Department defendants say that their motion to dismiss is based in part on lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  (Doc. 56.)  Though the Department defendants discuss the IDEA exhaustion requirements in their memorandum, they do not argue that Plaintiffs failed to exhaust administrative remedies.  (Doc. 57.) Plaintiffs pointed out that they exhausted their administrative remedies under the IDEA (Doc. 23, p. 15 n.2), and the Department defendants do not argue otherwise.  In fact, they admit that Plaintiffs' IDEA complaint resulted in a final decision.  (Doc. 57, p. 8.)  It appears the Department defendants are confusing lack of subject matter jurisdiction for failure to exhaust administrative  remedies with a statute of limitations defense.

It is Rule 12(b)(6) that allows a court to dismiss a complaint as barred by the statute of limitations "if the complaint itself established that the claim is time-barred." *Richardson v. Omaha School District*, 957 F.3d 869, 873 (8th Cir. 2020) (quoting *Humphrey v. Eureka Gardens Pub. Facility Bd.*, 891 F.3d 1079, 1081 (8th Cir. 2018)). The RCASD defendants state that their motion to dismiss based on the statute of limitations is brought pursuant to Rule 12(b)(6).[2]   (Doc. 35.)    They also admit that Plaintiffs' IDEA complaint resulted in an administrative final decision.  (Doc. 36, p. 13.)

---

[2]

 In their memorandum, the RCASD defendants also mention the Rule 12(b)(1) standard and discuss IDEA exhaustion requirements, but they do not argue that Plaintiffs have failed to exhaust administrative remedies.  (Doc. 36.)

Because Defendants' arguments are based on the IDEA statute of limitations and not on the IDEA's exhaustion requirement, the Court will analyze Defendants' motions to dismiss based on the statute of limitations under Rule 12(b)(6) rather than for lack of subject matter jurisdiction under Rule 12(b)(1).

As an initial matter, the Court will address both Defendants' motions to take judicial notice. RCASD defendants ask the Court to take judicial notice of the administrative complaint filed by Plaintiffs and the administrative decision. (Doc. 37.) Department defendants also ask the Court to take judicial notice of the administrative decision. (Doc. 58.)   Plaintiffs did not object to the requests for judicial notice.  The Eighth Circuit has found underlying administrative records to be public records that a district court may consider on a motion to dismiss.  *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003).  The fact of the administrative proceedings and the nature of the claims asserted and decided are relevant to Defendants' argument that the 90-day statute of limitations in the IDEA applies to bar Plaintiffs' claims in this lawsuit, and the Court will take judicial notice of the administrative complaint and decision.  *See Crooks v. Lynch*, 557 F.3d 846, 848 (8th Cir. 2009) (taking judicial notice of state administrative commission decision and appeal).

Defendants contend that Plaintiffs' non-IDEA claims are time-barred by the 90-day statute of limitations under the IDEA because they believe that the gravamen of Plaintiffs' lawsuit is an IDEA claim for denial of a FAPE.  The Supreme Court and the Eighth Circuit have examined the gravamen of the complaint in cases where a plaintiff failed to exhaust administrative remedies under the IDEA. *See Fry v. Napoleon Community Schools*, 580 U.S. 154, 137 S.Ct. 743 (2017) (developing "gravamen of complaint" test and remanding for a determination whether dismissal of case was appropriate for failure to exhaust administrative remedies); *J.M. v. Francis Howell Sch. Dist.*, 850 F.3d 944 (8th Cir. 2017) (applying *Fry* analysis and holding that dismissal for failure to exhaust was appropriate because gravamen of complaint was IDEA claim). However, the issue in this case is not whether Plaintiffs failed to exhaust administrative remedies. Plaintiffs exhausted, so *Fry* and *J.M.* are not pertinent.

7

The RCASD defendants cite *Smith v. Rockwood R-VI Sch. Dist.*, 895 F.3d 566 (8th Cir. 2018).  There, the Eighth Circuit affirmed the district court's decision to dismiss the complaint for failure to exhaust administrative remedies under the IDEA. The Eighth Circuit, applying the *Fry* analysis, found that the "gravamen of the complaint is the denial of public education," and thus the plaintiffs needed to follow the IDEA's exhaustion requirements.  *Id*. at 569.  Instead of obtaining a final administrative decision, the plaintiffs in *Smith* "privately resolved the case" and "voluntarily dismissed the due process complaint."  *Id*. at 567.  As in *J.M.*, the Eighth Circuit in *Smith* analyzed the gravamen of the complaint because the plaintiffs failed to exhaust administrative remedies under the IDEA before bringing their lawsuit in federal court alleging claims under the Rehab Act and § 1983.  The Eighth Circuit emphasized the importance of obtaining the "benefit of the administrative agency's expertise" regarding issues concerning the provision of a FAPE to a disabled child prior to pursuing other causes of action.  *Id*. at 570.  In the present case, Plaintiffs exhausted their administrative remedies and received the benefit of the administrative agency's expertise. The final administrative decision lays out the reasons for finding B.M. was denied a FAPE, and it sets forth the corrective actions to be taken by the RCASD. Accordingly, *Smith* is inapplicable in this case.

Here, the issue is whether the IDEA statute of limitations applies to bar Plaintiffs' claims as untimely.  Defendants have provided no authority for the proposition that the *Fry* analysis of the gravamen of the complaint applies when a plaintiff has exhausted administrative remedies.  In fact, Defendants acknowledge that the Eighth Circuit has never held that a court should examine the gravamen of the complaint in order to decide if the 90-day statute of limitation found in the IDEA applies to non-IDEA claims. (Doc. 36, p. 14; Doc. 57, p. 9.)  Defendants cite three out-of-circuit cases, all decided before *Fry*, ostensibly supporting their argument that the 90-day IDEA statute of limitations applies here if the gravamen of Plaintiffs' complaint is failure to provide a FAPE. *See Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247 (3d Cir. 2014); *Mr. & Mrs. D. v. Southington Bd. of Educ.*, 119 F. Supp. 2d 105, 115–16 (D. Conn. 2000); *I.M. v. Northampton Pub. Sch.*, 869 F. Supp. 2d 174, 187 (D. Mass. 2012). Those non-binding

8

and factually distinguishable cases are not helpful, and they do not alter the Court's interpretation and analysis of the statutory requirements.

In fact, Defendants incorrectly argue that the Third Circuit in *Blunt* affirmed the dismissal of ADA, Rehab Act, and IDEA claims pursuant to the 90-day statute of limitations found in IDEA's § 1415(i)(2)(B).  (Doc. 45, p. 4; Doc. 57, p. 10.)  In *Blunt*, the district court applied Pennsylvania's two-year statute of limitations for personal injury actions to the plaintiffs' ADA, Rehab Act, Title VII, and § 1983 claims.  *Id*. at 291.  The district court concluded that those claims were time-barred because they were filed more than two years after the alleged injuries.  *Id*.  The plaintiffs did not challenge that conclusion on appeal before the Third Circuit.  *Id*.  Therefore, the issue in *Blunt* was whether the IDEA 90-day statute of limitations barred the plaintiffs' IDEA claims.  *Id*. The Third Circuit concluded that the plaintiffs had plenty of time to become aware that the IDEA statute of limitations had changed to 90 days, and thus their IDEA claim in federal court was untimely because it was not filed within the 90-day time frame. *Id*. at 292.

Simply put, Defendants have not presented any strong or binding legal authority for the proposition that this Court should examine the gravamen of Plaintiffs' complaint to determine if the IDEA 90-day statute of limitations should apply to bar Plaintiffs' non-IDEA claims as untimely.

Furthermore, Defendants do not explain why the 90-day statute of limitations for an aggrieved party to bring a civil action in state or federal court would apply in this case where the Plaintiffs are not the aggrieved party.  The IDEA statute provides that, following a due process hearing, "any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section. . . ." 20 U.S.C. § 1415(i)(2)(A).  The aggrieved party has 90 days from the date of the administrative decision to bring the civil action.  20 U.S.C. § 1415(i)(2)(B).  Plaintiffs received a favorable decision and were not the party aggrieved by the findings or decision of the Department of Education,

so § 1415(i)(2) does not apply.[3]  *See*, *e.g.*, *B.D. v. District of Columbia*, 817 F.3d 792, 801 (D.C. Cir. 2016) ("One who wins before a hearing officer is not 'aggrieved' by the hearing officer's decision.").

Finally, Defendants make a policy argument in favor of applying the IDEA's 90-day statute of limitations to bar Plaintiffs' non-IDEA claims.  Defendants' policy argument misses the mark.  The Eighth Circuit has noted that federal policy requires "expeditious resolution of IDEA concerns."  *Strawn v. Missouri State Bd. of Educ.*, 210 F.3d 954, 957 (8th Cir. 2000).  But the reason for quick resolution is to prevent the "substantial harm" of lost education on the part of students.  *Id.*; *see also Fry*, 137 S.Ct. at 753–54 (noting that the IDEA's administrative procedures are primarily concerned with determining whether a school has met its obligation to provide disabled students with a FAPE).  The policy behind quick resolution of a student's IDEA concerns does not equate to a policy of barring a student's non-IDEA claims as untimely based on the IDEA statute of limitations.

For all of these reasons, Defendants' motions to dismiss based on the statute of limitations are denied.

## Dismissal for Failure to State a Claim under Rule 12(b)(6)

In ruling on a Rule 12(b)(6) motion to dismiss, the factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (internal quotations omitted).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds'

---

[3]
 Department defendants cite *Cease v. Henry, et. al.*, 5:22-CV-05015-RAL, Doc. 41, Opinion and Order on Pending Motions and Granting Motions to Dismiss, arguing that the same reasoning applies here and that this case should also be dismissed. (Doc. 57, pp 10-11.)  Defendants ignore a vital difference between this case and *Cease*.  In *Cease*, the plaintiffs received an adverse administrative ruling denying their claims.  (Doc. 41, pp. 2, 9.)  Judge Lange noted that the Ceases, as persons aggrieved by a denial of their administrative complaint, had 90 days to bring a civil action under 20 U.S.C. §1415(i)(2). (Doc. 41, pp. 13, 21.)  The Ceases did not file the civil action within 90 days as required by the statute.  Here, Plaintiffs were not the aggrieved party, so the 90-day time period to file a civil action in § 1415(i)(2) does not apply.

of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal citations omitted). The complaint must allege facts, which, when taken as true, raise more than a speculative right to relief. *Id.*; *Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—'that the pleader is entitled to relief.' " Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (citing Fed. R. Civ. P. 8(a)(2)). "Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted).

Department argues that it is entitled to dismissal of the Plaintiffs' ADA and Rehab Act claims pursuant to Rule 12(b)(6) because the "bare bones" general allegations in the complaint that the Department manages and controls educational affairs of South Dakota public schools, and that the Department failed to take corrective action after being put on notice of the "abusive and discriminatory policies in place at Knollwood Elementary School," are not sufficient to state a claim that is plausible on its face.[4]  (Doc. 57, pp. 11-12.) The Court concludes that Plaintiffs' allegations against the Unknown Staff at the South Dakota Department of Education are the archetype of a "[t]hreadbare recital[ ] of [an] element[ ] of a cause of action, supported by mere conclusory statements," that is insufficient to plead claims under the ADA and Rehab Act. *Iqbal*, 556 U.S. at 678. The ADA and Rehab claims are dismissed as to the Department Defendants.

## Plaintiffs' Pending Motions

---

[4]

 The Eighth Circuit has "consistently held that '[w]here alleged ADA and § 504 violations are based on educational services for disabled children, the plaintiff must prove that school officials acted in bad faith or with gross misjudgment.' " *B.M. ex rel. Miller v. S. Callaway R-II Sch. Dist.*, 732 F.3d 882, 887 (8th Cir. 2013) (quoting *Birmingham v. Omaha Sch. Dist.*, 220 F.3d 850, 856 (8th Cir. 2000), and also citing *M.Y. ex rel. J.Y. v. Special Sch. Dist. No. 1*, 544 F.3d 885, 888 (8th Cir. 2008)). The Eighth Circuit also has " 'held that the enforcement, remedies, and rights are the same under both Title II of the ADA and § 504 of the Rehabilitation Act.' " *Miller*, 732 F.3d at 887, quoting *Birmingham*, 220 F.3d at 856. Because the ADA and Rehab Act are similar in substance, "cases interpreting either are applicable and interchangeable" for analytical purposes. *Bahl v. Cty of Ramsey*, 695 F.3d 778, 783 (8th Cir. 2012) (internal citation omitted)). Thus, the Court will consider Plaintiffs' ADA and Rehab Act claims together.

Plaintiffs have two pending motions.  The Motion Not to Dismiss this Case will be granted for the same reasons that the Court denies Defendants' Motions to Dismiss. (Doc. 60.)

Plaintiffs also request assistance from the Court to obtain what they refer to as an "ad litem." (Doc. 50.)  This could be a request for appointment of a guardian ad litem pursuant to Fed.R.Civ. P. 17(c)(2) (providing that "[t]he court must appoint a guardian ad litem or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action").  However, it is not clear why appointment of a guardian ad litem is necessary when parents are the guardians of B.M. (Doc. 53, Second Amended Complaint, p. 1.)  In their motion, Plaintiffs state that there are "things" they need help with, including communicating with Defendants' lawyers. (Doc. 50.)  A guardian ad litem is not a child's lawyer, and it appears that Plaintiffs are expressing the need for the assistance of a lawyer rather than a need for a guardian ad litem.  However, Plaintiffs have not requested a court-appointed lawyer, and they have not shown that they are unable to afford the services of a lawyer.[5]

While parents may be entitled to bring suit in a representative capacity to redress the alleged violations of B.M.'s legal rights, *see* Fed. R. Civ. P. 17(c)(1)(A) (authorizing a general guardian to sue on behalf of a minor), they cannot do so by appearing pro se.  Although 28 U.S.C. § 1654 recognizes that an individual generally has the right to proceed *pro se* with respect to his or her *own* claims, the statute does not permit non-lawyers to represent anyone else other than themselves.[6]  *Knoefler v. United Bank of Bismarck*, 20 F.3d 347, 348 (8th Cir. 1994) ("A nonlawyer . . . has no right to represent another entity . . . in a court of the United

---

[5]
 The Court has the authority to appoint an attorney for a pro se litigant in a civil case - - 28 U.S.C. § 1915 provides that "[t]he court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). However, such appointments are rare.  *See Peterson v. Nadler*, 452 F.2d 754, 757 (8th Cir. 1971) (*abrogated on other grounds by Mallard v. U.S. Dist. Court for S. Dist. of Iowa*, 490 U.S. 296 (1989)).  The Eighth Circuit has explained:

> "Indigent civil litigants do not have a constitutional or statutory right to appointed counsel. *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996) (quoting *Edgington v. Mo. Dep't of Corr.*, 52 F.3d 777, 780 (8th Cir. 1995)). "Rather, when an indigent [plaintiff] has pleaded a nonfrivolous cause of action, a court 'may' appoint counsel." *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006). The authority to do so is set forth in 28 § U.S.C. 1915(e)(1), which provides that "[t]he court may request an attorney to represent any person unable to afford counsel."

*Crozier for A.C. v. Westside Cmty. Sch. Dist.*, 973 F.3d 882, 889 (8th Cir. 2020).

[6]
 Parents are allowed to pursue their own claims without a lawyer, if they have any claims independent of B.M.'s claims.

States.") (citations omitted). This is true even when a non-lawyer seeks to represent his or her own children. *See Crozier*, 973 F.3d at 888 (finding that district court properly ruled that non-attorney parents could not litigate on behalf of their minor child).

Appointment of a guardian ad litem would not alter the principle in 28 U.S.C. § 1654 that a non-lawyer is not allowed to represent another individual in federal court litigation without the assistance of counsel. The motion for a guardian ad litem will be denied without prejudice in order to allow Plaintiffs to hire legal counsel for B.M.

If Plaintiffs wish to get new counsel in this lawsuit and cannot get representation on a contingent fee basis, then Plaintiffs must attempt to hire counsel on a fee basis. If those attempts are not successful, then Plaintiffs may petition the Court for court appointed counsel. There are various considerations involved for the Court to consider in determining whether or not counsel should be appointed in a civil case. The most recent but not the only case from the United States Court of Appeals of the Eighth Circuit discussing some of those considerations is *Crozier for A.C. v. Westside Cmty. Sch. Dist.,* 973 F.3d 882 (8th Cir. 2020). A copy of that decision will be provided to Plaintiffs by the Clerk of Courts. If a request is made for court appointed counsel, the Court will require a waiver by the Plaintiffs of their attorney- client privilege so that the Court can learn from both Plaintiffs and their former counsel why their attorney-client relationship ended. Accordingly,

**IT IS ORDERED**:

1. Defendants' Motions to Take Judicial Notice are granted (Doc. 37 and Doc. 58);

2. Defendant RCASD's Motion to Dismiss is denied (Doc. 35);

3. Department Defendant's Motion to Dismiss is denied in part and granted to the extent that the ADA and Rehab Act claims in Counts VII and VIII are dismissed against Department Defendants (Doc. 56);

4. Plaintiffs' Motion Not to Dismiss This Case is granted (Doc. 60);

5. Plaintiffs' Motion for Help Obtaining Ad-Litem is denied without prejudice to Plaintiffs' right to file a motion for court appointed counsel (Doc. 50); and

6. The Clerk of Court shall provide Plaintiffs with a copy of *Crozier for A.C. v. Westside Cmty. Sch. Dist.,* 973 F.3d 882  (8th Cir. 2020).

Dated this 17th day of February, 2023.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST
MATTHEW W. THELEN, CLERK